UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DAVID HARDING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:20-cv-00061 |
| ) | Judge Aleta A. Trauger |
| BMW OF NORTH AMERICA, LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM AND ORDER**

BMW of North America, LLC ("BMW") has filed a Motion to Dismiss (Docket No. 10), to which David Harding has filed a Response (Docket No. 16), and BMW has filed a Reply (Docket No. 17). For the reasons set out herein, that motion will be granted in part and denied in part.

**I. BACKGROUND**[1]

Around April 26, 2014, Harding purchased a BMW car from BMW's authorized dealer in Nashville. He alleges that its engine, known as the N63 engine, "burns an excessive amount of engine oil," making the engine and components "more likely to prematurely fail and need frequent replacement." (Docket No. 1 ¶¶ 2, 14.) Because of this problem, "the car is worth less money, and [Harding] has had to spend time and money constantly dealing with the defect, including regularly adding quarts of oil to his car in between oil changes." (*Id.* ¶ 2 (emphasis omitted).) On January 22, 2020, Harding filed a Complaint in this court against BMW. (*Id.*) He stated five causes of action. Count I is for breach of warranty pursuant to the Magnuson-Moss Act, 15 U.S.C. §2301,

---

[1] Unless otherwise indicated, the facts herein are taken from Harding's Complaint and are taken as true for the purposes of the Motion to Dismiss. (Docket No. 1.)

*et seq.* Count II is for breach of the implied warranty of merchantability pursuant to the Magnuson-Moss Act and Tenn. Code Ann. § 47-2-314. Count III is for breach of express warranties pursuant to Tenn. Code Ann. § 47-2-313. Count IV is for violation of the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-101 *et seq.* Count V is for fraudulent concealment. (*Id.* ¶¶ 89–149.)

On March 11, 2020, BMW filed a Motion to Dismiss. (Docket No. 10.) BMW moved the court to dismiss Counts II, IV, and V for failure to state a claim for which relief could be granted. BMW also moved the court to order Harding to redraft and refile his Complaint, because "[t]he vast majority of the factual allegations in the Complaint have nothing to do with the breach of any express warranty, and the Complaint will therefore violate Rule 8(a)(2) of the Federal Rules of Civil Procedure because it is not short and plain." (*Id.* at 1.)

In his Response, Harding stated that he "withdraws" Counts II and V. (Docket No. 16 at 1 n.1.) He said the same of two of the allegations stated under Count IV, specifically those related to Tenn. Code Ann. §§ 47-18-104(b)(21) and (b)(23). (*Id.* at 4 n.2.) The only contested questions pending before the court, therefore, are whether the court should dismiss the remaining TCPA claims alleged under Count IV and whether the court should order Harding to file a new Complaint.

## II. LEGAL STANDARD

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon

2

which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

### III. ANALYSIS

#### A. TCPA

The TCPA outlaws "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code Ann. § 47-18-104(a). The Act sets forth a long list of specific actions covered by the definition of "unfair or deceptive act or practice." Tenn. Code Ann. § 47-18-104(b). As relevant to this case, the Act forbids:

> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship approval, status, affiliation or connection that such person does not have; . . .
>
> (7) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another; . . . [or]
>
> (19) Representing that a guarantee or warranty confers or involves rights or remedies which it does not have or involve . . . .

3

*Id.* The TCPA creates a cause of action for damages available to "[a]ny person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice described in § 47-18-104(b)." Tenn. Code Ann. § 47-18-109(a)(1).

Harding alleges that he has viable TCPA claims pursuant to four subsections: Tenn. Code Ann. § 47-18-109(a); Tenn. Code Ann. § 47-18-104(b)(5); Tenn. Code Ann. § 47-18-104(b)(7); and Tenn. Code Ann. § 47-18-104(b)(19). Harding's allegation under subsection (a) is that BMW's actions regarding the engine defect, particularly regarding its failure to disclose the defect once it became aware of it, amounted to unfair or deceptive trade practices, independent of any of the specific practices enumerated in subsection (b). Harding's allegations under subsections (b)(5) and (b)(7) are that BMW represented that the type of engine in Harding's car consumed oil at a normal rate, or at least not at the defective rate that it did. His allegation under subsection (b)(19) is that BMW represented that the car's warranty would cover defects such as the oil problem, when BMW in fact refused to cover any physical repair of the problem when Harding sought to obtain it.

<u>1. Standard for Pleading TCPA Violations</u>

BMW spends a great deal of time discussing the pleading standards of Rule 8 of the Federal Rules of Civil Procedures, but another Rule—Rule 9(b)—may be more relevant to Harding's TCPA claims. Rule 9(b) states that, when pleading fraud or mistake, "a party must state with particularity the circumstances constituting fraud." The Sixth Circuit has recognized that the particularity requirement applies not only to claims that explicitly go under the name "fraud" but also to any "claims *sounding in* fraud." *Smith v. Bank of Am. Corp.*, 485 F. App'x 749, 751 (6th Cir. 2012) (emphasis added). For example, the Sixth Circuit has held that Rule 9(b) applies to

4

claims under the False Claims Act based on "false or fraudulent claim[s] paid or approved by the Government." *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008) (quoting 31 U.S.C. § 3729(a)(2)). District courts in Tennessee have held that Rule 9(b) applies to TCPA claims. *See, e.g.*, *Bridgestone Ams., Inc. v. Int'l Business Machines Corp.*, 172 F. Supp. 3d 1007, 1019 (M.D. Tenn. 2016) (Sharp, J.); *Carbon Processing & Reclamation, LLC v. Valero Mktg. & Supply Co.*, 694 F. Supp. 2d 888, 900, 915 (W.D. Tenn. 2010).[2]

Ordinarily, then, this court would apply Rule 9(b) when deciding a Rule 12(b)(6) motion directed at a TCPA claim. BMW, however, has not alleged that Harding's TCPA claims fail to comply with Rule 9(b). To the contrary, BMW has consistently focused on whether Harding has complied with the ordinary pleading requirements of Rule 8. Many courts have stated or held that, "[i]f the failure to plead with particularity under Rule 9(b) is not raised in the first responsive pleading or in an early motion, the issue will be deemed waived.".*Marathon Petroleum Co., LP v. Future Fuels of Am., LLC*, No. 10-14068, 2012 WL 1893506, at *2 (E.D. Mich. May 23, 2012) (quoting Moore's Federal Practice–Civil § 9.03[5]); *see Joshi v. Joshi*, No. 18 C 5426, 2019 WL 3554388, at *5 (N.D. Ill. Aug. 1, 2019) ("A party who fails to raise a Rule 9(b) objection normally waives the requirement.") (quoting *United Nat. Records, Inc. v. MCA, Inc.*, 609 F. Supp. 33, 38–39 (N.D. Ill. 1984)); *Hi-Lex Controls Inc. v. Blue Cross & Blue Shield of Mich.*, No. 11-12557, 2013 WL 2285453, at *28 (E.D. Mich. May 23, 2013) (concluding that Rule 9(b) challenge was waived); *Northrop Grumman Corp. v. Factory Mut. Ins. Co.*, No. CV 05-08444 DDP (PLAx), 2006 WL 8422003, at *2 (C.D. Cal. Aug. 9, 2006) (same). Because BMW did not raise Rule 9(b) in its motion, the court will consider Harding's allegations only pursuant to Rule 8.

---

[2] Tennessee courts also subject TCPA claims to Rule 9.02 of the Tennessee Rules of Civil Procedure, which is similar to Rule 9(b) of the Federal Rules of Civil Procedure. *See, e.g.*, *Harvey v. Ford Motor Credit Co.*, 8 S.W.3d 273, 275 (Tenn. Ct. App. 1999).

5

2. Tenn. Code Ann. § 47-18-104(a)

BMW argues that, based on amendments to the TCPA, an individual cannot file an action for damages for an unfair or deceptive practice other than those specifically enumerated in subsection (b). BMW is correct that Tenn. Code Ann. § 47-18-109(a)(1)limits an individual's cause of action under the TCPA to damage he has suffered due to "an unfair or deceptive act or practice *described in § 47-18-104(b)*." (Emphasis added.) Subsection (b) has historically included a "catch-all" provision reaching "any other act or practice which is deceptive to the consumer or to any other person." Tenn. Code Ann. § 47-18-104(b)(27) (2010). In 2011, however, the catch-all provision was amended to state that its enforcement was "vested exclusively in the office of the attorney general and reporter and the director of the division [of consumer affairs in the department of commerce and insurance]." In its present form, enforcement of the catch-all provision is vested solely in the office of the attorney general and reporter. Tenn. Code Ann. § 47-18-104(b)(27). Harding, therefore, can only sue for damages based on one of the specific subsections of Tenn. Code Ann. § 47-18-104(b).

3. Tenn. Code Ann. § 47-18-104(b)(5) and (b)(7)

BMW argues that Harding has failed to state a cause of action under either Tenn. Code Ann. § 47-18-104(b)(5) or Tenn. Code Ann. § 47-18-104 (b)(7) because he has failed to identify any specific false or misleading statements made by BMW itself, as opposed to an affiliated dealer, to Harding. Harding responds that he has adequately alleged that BMW misrepresented the performance of the engine and made numerous statements in an attempt to mislead and obfuscate about the problem.

According to the Complaint, "the stated recommended oil service interval at the time of sale of the subject vehicles was the earlier of 15,000 miles or two years." (Docket No. 1 ¶ 54; *see*

6

*also id.* ¶ 59 ("BMW had long emphasized the fact that its vehicles can go long periods without service and sold many N63 vehicles with the promise of a two-year or 15,000 mile service interval.") These assurances, Harding alleges, were inherently incompatible with the actual defective nature of the engine. Harding does not supply much detail regarding how the 15,000-mile recommendation was disseminated.

Harding also points to a number of technical service bulletins, or TSBs, issued by BMW to address the engine's oil consumption issues. "TSBs are recommended repairs issued by automotive manufacturers and directed only to automotive dealers. TSBs are frequently issued when a manufacturer receives widespread reports of a particular problem with its vehicles." (*Id.* ¶ 48 & n.2.) TSBs appear to have acknowledged the existence of a fuel consumption issue at least as early as 2012. (*Id.* ¶ 49.) According to Harding, "[i]n June 2013, BMW issued SIB-11-01-13, which took the extraordinary step of changing engine oil consumption specifications for N63 vehicles, and specifically instructed service technicians to add two quarts of engine oil to N63 vehicles when the vehicles instruct owners to add only one additional quart of oil." (*Id.* ¶ 50.) In other words, BMW recommended that technicians "overfill[]" the engine with oil, to address the rapidity with which oil was being consumed. (*Id.* ¶ 51.)

Harding also cites another TSB regarding the oil consumption issue, number SIB-11-03-13, which discusses a wide range of factors that can contribute to an engine's rate of oil consumption. According to Harding, "BMW included every conceivable driving situation within this Service Bulletin as a factor for engine oil consumption so as to minimize their own responsibility and/or deflect blame onto consumers for the oil consumption defect." (*Id.* ¶ 53.) Harding complained to his local BMW dealership about his car's oil consumption problem, but was rebuffed and told that the oil consumption was normal. (*Id.* ¶¶ 2–3, 17.)

Subsections (b)(5) and (b)(7), however, cover specific types of misrepresentations, namely "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" and "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another." Tenn. Code Ann. § 47-18-104(b)(5), (b)(7). None of the TSPs that Harding has identified actually contains any false representation that the engine at issue had better fuel consumption than it did. *Cf. Legens v. Lecornu*, No. W2013-01800-COA-R3CV, 2014 WL 2922358, at *4 (Tenn. Ct. App. June 26, 2014) ("[T]he trial court found Plaintiff 'failed to prove the seller misrepresented the vehicle' in order to prove a violation of Tennessee Code Annotated section 47-18-104(b)(5) and (7).").

The only potential misrepresentation that could support Harding's claims, then, is the claim that the engine had an oil service interval of 15,000 miles or two years. Harding has provided very little detail about that supposed misrepresentation. BMW, however, has not invoked the heightened pleading requirements of Rule 9(b), meaning that Harding's allegations must satisfy only the ordinary pleading standard of putting BMW on notice of the basis for a plausible claim for relief. And while the Complaint does little to connect the 15,000-mile claim directly to Harding's own purchase of his car, Tennessee courts have stated that, "'in TCPA cases involving misrepresentation, a plaintiff is not required to show reliance upon a misrepresentation in order to maintain a cause of action,'" but rather is only "required to show that [the defendant's] wrongful conduct proximately caused his injury." *Johnson v. Dattilo*, No. M2010-01967-COA-R3CV, 2011 WL 2739643, at *7 (Tenn. Ct. App. July 14, 2011) (quoting *Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 469 (Tenn. Ct. App. 2003); *White v. Early*, 211 S.W.3d 723, 741 (Tenn. Ct. App. 2006)). Harding has alleged that the 15,000-mile representation

was the starting point of a pattern of obfuscation that caused him to be unaware of the engine's defects, and he has asserted that, if he had known about that defect, he would not have purchased the car. (Docket No. 1 ¶ 7.) At this stage and under Rule 8, that is sufficient—barely—to avoid dismissal.

### 4. Tenn. Code Ann. § 47-18-104(b)(19)

The warranties for Harding's vehicle stated that BMW warranted "against defects in materials or workmanship." (Docket No. 1 ¶ 27.) Harding went to his dealership seeking to enforce the warranty with regard to the oil consumption problem, but the dealership refused to repair the problem. (*Id.* ¶ 17.) Harding has alleged that this amounted to a breach of warranty, and BMW, at this point, has not sought dismissal of the breach of warranty claims based on those underlying events. BMW argues, however, that a simple breach of warranty is not reached by Tenn. Code Ann. § 47-18-104(b)(19), which is directed at "[r]epresenting that a guarantee or warranty confers or involves rights or remedies which it does not have or involve."

BMW is correct that "a breach of . . . warranty is not [in] and of itself a deception, misrepresentation or unfairness under the TCPA." *Wilson v. State Farm Fire & Cas. Co.*, 799 F. Supp. 2d 829, 842 (E.D. Tenn. 2011) (quoting *Office Furniture & Related Servs. Inc. v. United Const. Corp.*, No. M2003-02126-COA-R3CV, 2005 WL 378707, at *5 (Tenn. Ct. App. Feb. 16, 2005)). Indeed, one of the express elements of subsection (b)(19) is that the warranty at issue "does not have or involve" the rights at issue. If BMW had in some way represented to Harding that the defective engine was covered by the warranty, when it was not, that would be actionable under the TCPA. Harding, however, does not allege any representations to him by BMW about the contents of the warranties other than the warranties themselves. *See Ismoilov v. Sears Holdings Corp.*, No. M2017-00897-COA-R3-CV, 2018 WL 1956491, at *8 (Tenn. Ct. App. Apr. 25, 2018) (holding

9

that subsection (b)(19) did not apply because the defendant "did not expressly state in any of the communications presented that the warranty provided coverage for such a claim"). The court, accordingly, will dismiss Count IV insofar as it relies on Tenn. Code Ann. § 47-18-104(b)(19).

**B. Rule 8**

Rule 8 states that a Complaint should contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). BMW argues that Harding has violated this requirement by including extraneous information, such as details of events that occurred after he purchased his car. BMW asserts that Harding has recycled or minimally changed language from other litigation based on the same engine defect, to which Harding was a party before his claims were dismissed without prejudice. BMW argues that the court should therefore require Harding to refile his Complaint with a more concise, focused set of allegations.

BMW's motion is the functional equivalent of a motion to strike "redundant, immaterial, impertinent, or scandalous matter" from a pleading pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. Motions to strike "are viewed with disfavor and are not frequently granted," *Operating Eng'rs Local 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) (citing *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir.1977); *Brown & Williamson Tobacco Corp. v. U.S.*, 201 F.2d 819, 822 (6th Cir. 1953)), because they are, more often than not, simply "time wasters" that tie the court and the parties up in "purely cosmetic" matters, *Neal v. City of Detroit, No. 17-13170, 2018 WL 1399252*, at *1 (E.D. Mich. Mar. 19, 2018) (quoting Wright & Miller, 5C Fed. Prac. & Proc. § 1382 (3d ed. 2004)).

Harding's Complaint is twenty-nine pages long—hardly voluminous by the ordinary standards of cases involving defective products. Moreover, while some of the facts alleged are not necessary to stating Harding's claims, they are all plausibly part of telling the larger story of

BMW's actions surrounding the engine defect. The court will only strike supposedly immaterial facts from a complaint if the facts alleged "ha[ve] no possible relation to the controversy." *Clark v. Roccanova*, 772 F. Supp. 2d 844, 850 (E.D. Ky. 2011) (quoting *Brown & Williamson*, 201 F.2d at 822). Framing BMW's objections in terms of Rule 8 does not change that analysis. The court therefore will not grant BMW's request to require Harding to revise his Complaint.[3]

## IV. CONCLUSION

For the foregoing reasons, BMW's Motion to Dismiss (Docket No. 10) is hereby **GRANTED** in part and **DENIED** in part. Counts II and V are hereby dismissed. Count IV is dismissed in part, insofar as it relies on Tenn. Code Ann. § 47-18-104(b)(19), (b)(21), or (b)(23), or any alleged unfair or deceptive practices not enumerated in Tenn. Code Ann. § 47-18-104(b).

The initial case management conference is reset for September 28, 2020 at 3:30.

It is so **ORDERED**.

ALETA A. TRAUGER
United States District Judge

---

[3] Of course, Harding retains the same rights as any similarly situated plaintiff to pursue amendment of his Complaint if he wishes to do so.